UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LATONYAL WILLIS,

        Plaintiff,

vs.                              Case No.  3:09-cv-297-J-20MCR

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her application for Social Security benefits.  The Court has reviewed

the record, the briefs, and the applicable law.  For the reasons set forth herein, the

Commissioner's decision is **AFFIRMED.**

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability, disability insurance benefits

("DIB"), and supplemental security income ("SSI") on July 11, 2003, and June 12, 2003,

respectively.  (Tr. 51-51, 996).  The Social Security Administration denied Plaintiff's

application initially and on reconsideration.  (Tr. 55-56, 998, 1001-02).  Plaintiff then

requested and received a hearing before an Administrative Law Judge (the "ALJ") on

March 14, 2007.  (Tr. 57, 1011-1103).  On November 15, 2007, the ALJ issued a

decision finding Plaintiff was not disabled.  (Tr. 16-37).  The Appeals Council denied

_____

[1]The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.
(Doc. 20).

Plaintiff's request for review on February 26, 2009, thus making the ALJ's November 15, 2007 decision the final decision of the Commissioner.  (Tr. 5-7).  Plaintiff timely filed her Complaint in the U.S. District Court for review of the Commissioner's decision.  (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

In the Disability Report filed in conjunction with her applications, Plaintiff claims to be disabled since November 22, 2002, due to herniated discs; problems with her left knee, leg, and ankle; problems with her left elbow; a neck injury; and mid-back pain.  (Tr. 75).  At the hearing before the ALJ on March 14, 2007, Plaintiff alleged disability due to AIDS, side effects of medication (fatigue and memory loss), leg pain, depression, and schizophrenia.  (Tr. 1073-75).

### B.   Summary of Evidence Before the ALJ

Plaintiff was 41 years old at the time of the ALJ's decision.  (Tr. 37, 996).   She has a limited education[2] and previous work experience as a cashier and a packer/inspector/machine operator.  (Tr. 29).  Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.

Plaintiff was involved in an automobile accident on November 22, 2002 and was diagnosed with acute multiple contusion and myalgia.  (Tr. 261-67).   On November 26, 2002, Dr. Emas examined Plaintiff and noted reduced range of motion of her cervical spine and tenderness to palpitation in the bilateral cervical paraspinal muscles,

---

[2]Plaintiff's exact level of education is unclear as she has provided inconsistent statements regarding the same.  She reported to Dr. Emas that she completed high school, but later testified to the ALJ that she only completed the eleventh grade.  (Tr. 159, 1044).

trapezuis and periscapular region.  (Tr. 540-43).  She also had mild tenderness to palpation of the lumbar spine.  (Id.).  An MRI performed on December 5, 2002 revealed paracentral disc herniation at T1-2.  (Tr. 139-40).

Plaintiff was seen by neurologist Dr. Kilgore from January 2003 through March 2003.  (Tr. 184-201).  Subsequently, Plaintiff was examined by orthopaedist Dr. Lancaster.  (Tr. 162-64).  Dr. Lancaster's examination of Plaintiff revealed tenderness to palpation of her neck, thoracic spine, and trapezius muscles on the left.  (Id.).  Between May 2003 through June 2003, Plaintiff treated with Dr. Salahi, a pain management specialist.  (Tr. 165-72).  She was diagnosed with left trapezial and cervical strain and left medial epicondylitis and underwent three trigger point injections and epidural steroid injection.  (Id.).

On September 17, 2003, Dr. Sanchez performed a psychological examination of Plaintiff.  (Tr. 272-73).  Dr. Sanchez opined that Plaintiff's episodic psychiatric decompensation and periods of mania and depression indicated a schizoaffective disorder, presently mildly depressed.  (Id.).  However, she was capable of managing her own funds and could avoid psychotic and depressive episodes with appropriate medical treatment.  (Id.).  He also stated that Plaintiff exhibited no cognitive or memory defect.  (Id.).

In November 2003, December 2003, and June 2004, Plaintiff presented to the emergency room for pain.  (Tr. 308-12, 342-45).  On February 4, 2005, Plaintiff was examined by Dr. Lucas and diagnosed with schizoaffective disorder and pain disorder with psychological and medical features.  (Tr. 354-57).  Her insight was poor and her

prognosis was guarded.  (Id.).  On February 21, 2005, Dr. McCormick examined Plaintiff

and noted she had limitations of range of cervical motions.  (Tr. 376-84).  However, Dr.

McCormick did not describe any limitations.  (Id.).

    In March 2005, Plaintiff was diagnosed with HIV.  (Tr. 428-34).  She was treated

by Dr. Issa from December 2005 through July 2006.  (Tr. 397, 428-55).  On December

28, 2005, Dr. Issa opined Plaintiff could not work for long hours and could only work

desk jobs.  (Tr. 397).  On May 15, 2006, Dr. Issa again opined Plaintiff could work no

more than ten hours a week, with no standing for long hours or lifting heavy objects.

(Tr. 398).  On July 26, 2006, Dr. Issa opined Plaintiff was moderately limited in her

ability to deal with work stress; her pain or other symptoms were severe enough to

interfere with attention and concentration frequently; she could only stand for four hours

a day, sit for four hours; she would have good days and bad days; she could lift and

carry up to fifty pounds occasionally; she would need a sit/stand option and periods of

walking; and she would need to be absent about three times per month.  (Tr. 449-52).

    On February 14, 2005, Dr. Williams reviewed Plaintiff's medical records and

opined that she could maintain non-psychotic and independent functioning when sober

and in treatment, could reliably carry out simple, routine tasks and familiar detailed

tasks adequate to complete an eight hour workday, could work with the public and co-

workers in a casual setting, and could accept non-threatening supervision.  (Tr. 360).

Dr. Williams opined Plaintiff was moderately limited in social functioning; maintaining

concentration, persistence, and pace; the ability to interact appropriately with the

general public; the ability to accept instructions and respond appropriately to criticism

from supervisors; the ability to set realistic goals or make plans independently of others; and the ability to carry out detailed instructions.  (Tr. 358-59, 372).  Additionally, Plaintiff was not significantly limited in several other areas, including the ability to complete a normal workweek without psychologically based interruptions.  (Tr. 358-59).

On October 10, 2006, Dr. Maida diagnosed Plaintiff with schizoaffective disorder, presently anxious and depressed, passive dependent personality disorders, history of AIDS, and herniated disc.  (Tr. 937-40).  Dr. Maida indicated Plaintiff would have difficulty dealing with a stressful job and would likely suffer from delusional ideas of reference and hallucinations.  (Id.).

On February 27, 2007, Dr. Sanchez re-evaluated Plaintiff and diagnosed her with schizophrenia, paranoia, disturbances in mood and emotional ability and impairment in impulse control, delusions or hallucinations, and emotional withdrawal and isolation.  (Tr. 964-80).  He opined Plaintiff had marked limitations of restrictions of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. (Id.).

At the hearing before the ALJ on March 14, 2007, Dr. Lewis opined Plaintiff was able to do reasonably well with her activities of daily living, did fairly well with social activities, and should be able to maintain the minimum mental requirements at work when she is compliant with her medication schedule.  (Tr. 1018).  Additionally, Plaintiff

could perform full time work with simple, one to two step, or repetitive type work with occasional interaction with co-workers and supervisors.  (Tr. 1028-29, 1037-39).[3]

### C.   Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. §§ 404.1520(b), 416.920(a)(2)(I).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. §§ 404.1520(d), 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(a)(2)(iv).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. §§ 404.1520(f),

---

[3]On April 2, 2007, Dr. Maida wrote a letter disputing Dr. Lewis' opinion.  (Tr. 995).  In said letter, Dr. Maida stated that any increase in stress, such as employment itself, risked psychological regression and decompensation.  (Id.).

416.920(a)(2)(v).  Plaintiff bears the burden of persuasion through step four, while at

step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146,

107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in

substantial gainful activity since her alleged onset date.  (Tr. 21).  At step two, the ALJ

found Plaintiff had the following severe impairments: HIV; disc herniation at T1-2 without

nerve root compromise; schizoaffective disorder; and history of alcohol abuse.  (Tr. 21-

23).  At step three, the ALJ determined Plaintiff did not have an impairment, or any

combination thereof, which met or equaled any of the impairments listed in Appendix 1,

Subpart P of the Regulation No. 4.  (Tr. 23-27).  At step four, the ALJ determined

Plaintiff retained the residual functional capacity ("RFC")[4] to perform a "minimally

reduced range of sedentary work."  (Tr. 27-35).  Specifically, the ALJ found Plaintiff had

the RFC to:

> [P]erform simple one and two step tasks with no contact with
> the general public, occasional contact with supervisors and co-
> workers, no exposure to televisions or radios and that do not
> require her to lift/carry more than 10 pounds frequently and 20
> pounds occasionally. [Plaintiff] is able to sit, stand and walk for
> six hours in an 8 hour day, with occasional bending, stooping,
> crouching, kneeling and crawling.

(Tr. 27).[5]

---

[4]The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations.  20 C.F.R. §§ 404.1545, 416.945.  The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation.  Id.

[5]The ALJ's RFC determination is for a restricted range of light work.  20 C.F.R. §§ 404.1567(b); 416.927(b).  "Light work involves lifting no more than 20 pounds at a time with

(continued...)

At the March 14, 2007 hearing, the ALJ utilized the testimony of a vocational expert (the "VE").  The ALJ posed hypothetical questions to the VE that included Plaintiff's symptoms and their resulting limitations.  Based on the hypotheticals posed, the VE testified Plaintiff's past relevant work exceeded the ability of her RFC.  (Tr. 35).  The ALJ then asked the VE whether a person with Plaintiff's RFC could perform any other jobs existing in significant numbers in the national economy.  The VE replied that a person with Plaintiff's RFC could perform work as a ticketer, addresser, table worker, driver, and preparer, which all exist in significant numbers in the national economy.  (Tr. 36-37).  Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act.  (Tr. 37).

## III.   ANALYSIS

### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a

---

[5](...continued)
frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Id.

suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## B.  Issues on Appeal

Plaintiff raises three issues on appeal. First, Plaintiff contends the ALJ improperly discredited the treating source opinions of Dr. Issa. (Doc. 16, pp. 9-14). Second, Plaintiff argues the ALJ improperly relied on the opinions of the non-examining medical professionals. (Doc. 16, pp. 14-20). Third, Plaintiff contends the ALJ improperly relied on the VE's testimony that Plaintiff could perform work existing in significant numbers in the national economy. (Doc. 16, pp. 20-24). The Court will address each of these issues.

**1.     Whether the ALJ properly discredited the treating source opinions of Dr. Issa.**

Plaintiff argues the ALJ failed to fully articulate and establish good cause for rejecting the opinions of Dr. Issa, Plaintiff's treating physician.  (Doc. 16, pp. 9-14).  Specifically, on December 28, 2005, Dr. Issa opined Plaintiff could not work for long hours and could only work desk jobs.  (Tr. 397).  On May 15, 2006, Dr. Issa opined Plaintiff could work no more than ten hours a week, with no standing for long hours or lifting heavy objects.  (Tr. 398).  On July 26, 2006, Dr. Issa opined Plaintiff was moderately limited in her ability to deal with work stress; her pain or other symptoms were severe enough to interfere with attention and concentration frequently; she could only stand and sit for four hours a day; she could lift and carry up to fifty pounds occasionally; she would need a sit/stand option and periods of walking; and she would need to be absent about three times per month.[6]  (Tr. 449-52).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.[7]  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Lewis v. Callahan,

---

[6]In the same evaluation, Dr. Issa opined Plaintiff had no significant limitations in doing repetitive reaching, handling, or fingering; no need for a cane or assistive devise; and no need for unscheduled breaks during an 8 hour workday.  (Tr. 451-52).

[7]The regulations define a "treating source" as:

> your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have

(continued...)

125 F.3d 1436,1440 (11th Cir. 1997); <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th

Cir. 1986); <u>see</u> <u>also</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Such a preference is

given to treating sources because such sources are likely to be best situated to provide

a detailed and longitudinal picture of the medical impairments.  <u>Lewis</u>, 125 F.3d at 1440.

Furthermore, the ALJ must specify the weight given to the treating physician's opinion or

reasons for giving the opinion no weight, and the failure to do so is reversible error.

<u>MacGregor</u>, 786 F.2d at 1053.  Good cause for rejecting a treating source's opinion may

be found where the treating source's opinion was not bolstered by the evidence, the

evidence supported a contrary finding, or the treating source's opinion was conclusory

or inconsistent with his or her own medical record.  <u>Phillips</u>, 357 F.3d at 1240-41 (citing

<u>Lewis</u>, 125 F.3d at 1440); <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987).

Where the Commissioner has ignored or failed properly to refute the treating physician's

testimony, such testimony, as a matter of law, must be accepted as true.  <u>MacGregor</u>,

786 F.2d at 1053.

    Here, the Court finds good cause supports the ALJ's decision to decline to give

portions of Dr. Issa's opinions considerable weight because they are not bolstered by

the record evidence.  With regard to Dr. Issa's opinions, the ALJ stated:

---

[7](...continued)
> seen, the source with a frequency consistent with accepted medical
> practice for the type of treatment and/or evaluation required for your
> medical condition(s).

20 C.F.R. §§ 404.1502, 416.902.  A medical source who has treated or evaluated a claimant only a few times or only after long intervals (e.g., twice a year) may be considered a treating source if the nature and frequency of the treatment or evaluation is typical for the conditions.  <u>Id.</u>

The [ALJ] did not fully accept the conclusions of Dr. Issa, who has treated [Plaintiff] for HIV. Although Dr. Issa concluded that [Plaintiff] had no limitations as a result of her HIV status, he indicated her depression and medication side effects causing fatigue restricted her to part-time work. Yet, Dr. Lewis noted that Dr. Issa indicated that he was not sure whether [Plaintiff] was malingering. Dr. Issa's treatment notes do not document clinical signs and observations which establish that [Plaintiff] meets the diagnostic criteria for depression or describe the extent of [Plaintiff]'s alleged fatigue. Furthermore, the ALJ notes that Dr. Issa is an internist, rather than a mental health professional, and that he did not recommend any treatment for depression, other than medication. Although [Plaintiff] may suffer from some fatigue as a result of medication side effects, the [ALJ] finds that her activities of daily living are consistent with the ability to sustain at least light level physical activities.

(Tr. 33-34).[8]

Dr. Issa opined that Plaintiff suffers no severe limitations as a result of her HIV, but experiences moderate mental limitations from depression. (Tr. 33, 455). However, as articulated by the ALJ, Dr. Issa is not a mental health professional, but an internist who treated Plaintiff for HIV and did not recommend any specialized treatment for depression (besides medication). (Tr. 33); see 20 C.F.R. §§ 404.1527(d), 416.927(d) (more weight is generally given to the opinion of a specialist about the medical issues related to his or her area of specialty than the opinion of a source who is not a specialist). The mental health professionals who reviewed Plaintiff's medical records

---

[8]Plaintiff argues the ALJ failed to specifically discuss his reasons for not crediting the opinions of Dr. Issa. (Doc. 16, pp. 9-14). The Court finds this argument lacks merit. See (Tr. 33-34). Indeed, the ALJ's RFC assessment incorporates portions of Dr. Issa's opinions, including his opinions that Plaintiff was moderately limited in her ability to deal with work stress, had moderate difficulty maintaining social functioning, was moderately deficient in concentration, persistence, or pace, but had no daily living activity restrictions. (Tr. 450, 545-55). However, the rest of Dr. Issa's opinions lacked support in the record and, therefore, the ALJ properly declined to give them significant weight in the RFC assessment. (Tr. 27, 33-35).

indicated that when she remained sober and in treatment for her mental disorder, she

was independently functioning and could avoid psychotic and depressive episodes.  (Tr.

33, 272-73, 374, 1018); see Dawkins v. Bowen, 848 F. 2d 1211, 1213 (11th Cir. 1988)

(medical conditions that are controlled with medication are not disabling).  Moreover, the

only alleged symptoms noted by Dr. Issa were fatigue from depression and diffuse

arthralgia.  (Tr. 448-55).  The record contains little evidence regarding the limiting extent

of Plaintiff's alleged fatigue and there is no objective evidence supporting the alleged

diffuse arthralgia.[9]  (Tr. 23, 33, 453-55).  In fact, in a medical questionnaire, Dr. Issa

stated that Plaintiff's medical condition caused no restrictions in her daily activities, and

he left blank all questions pertaining to the duration and frequency of Plaintiff's

symptoms.  (Tr. 453-54).

Additionally, the Court finds good cause supports the ALJ's decision to decline to

give portions of Dr. Issa's opinion considerable weight because it is not supported by

Plaintiff's activities of daily living.  (Tr. 34); see Phillips, 357 F. 3d at 1241.  The ALJ

properly noted that Plaintiff's activities of daily living are consistent with the ability to

sustain at least light level physical activities.  (Id.).  Plaintiff states she drives from time

to time, uses public transportation twice a week, gets along with people in authority and

the public, is able to deal with deadlines and schedules, can follow written or spoken

instructions, is able to care for herself, watches television, cooks, shops, cleans,

manages her own money, reads magazines, talks on the telephone, visits and gets

along with her friends and family, and attends church once every three weeks or so with

---

[9]Plaintiff's MRI and X-ray results have generally been normal.  (Tr. 136-38, 173-81).

her neighbor.  (Tr. 106-09, 111, 113, 10-68-72).  Additionally, Dr. Lewis opined Plaintiff is able to do reasonably well with her activities of daily living and fairly well with social activities.  (Tr. 1018).  Further, Dr. Issa offered no restrictions on Plaintiff's activities of daily living.  (Tr. 454).

Moreover, Dr. Issa's opinions that Plaintiff could only work part time, could only work ten hours a week, or could not work long hours are administrative findings reserved to the Commissioner.  (Tr. 28, 397-98, 455); see SSR 96-8p ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Although an ALJ will consider opinions from acceptable medical sources, "the final responsibility for deciding these issues is reserved to the Commissioner."  20 C.F.R. §§ 404.1527(e), 416.927(e).[10]  Therefore, Dr. Issa's opinion that Plaintiff is unable to work full time is a decision reserved for the Commissioner.

Accordingly, after review of the medical evidence and essentially for the reasons set forth by the Commissioner, the undersigned concludes that the ALJ fairly considered the findings and conclusions of Plaintiff's treating source, Dr. Issa, and discounted a portion of the same for reasons fully articulated and supported by the medical evidence.

---

[10]Any opinions from physicians on these issues "are not medical opinions ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e. that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(e).

**2.    Whether the ALJ properly relied on the opinions of the non-examining medical professionals.**

Plaintiff argues the ALJ erred in crediting the opinions of non-examining medical expert, Dr. Lewis, and psychological consultant, Dr. Williams, over the opinions of examining mental health professionals.  (Doc. 16, pp. 14-20).  "Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians' [opinions] are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists."  McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).  However, an ALJ can accord more or less weight to a particular source if there is good cause to do so.  See Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Here, Plaintiff argues that the opinions of non-examining physicians Dr. Lewis and Dr. Williams should have been accorded little weight because they contradict an examining physician's opinion.  (Doc. 16, pp. 19-20).  However, opinions of non-examining sources may override opinions from examining or treating sources, provided that the non-examining source's opinion is supported by the evidence of record.  20 C.F.R. §§ 404.1527(d), 416.927(d).  Dr. Lewis testified as a medical expert[11] at the hearing before the ALJ on March 14, 2007 and opined Plaintiff was able to do reasonably well with her activities of daily living, did fairly well with social activities, and

---

[11]The opinions of medical experts may be entitled to great weight if supported by the evidence of record.  20 C.F.R. §§ 404.1512(b)(6), 416.912(b)(6).

should be able to maintain the minimum mental requirements at work when she is

compliant with her medication schedule. (Tr. 1018).  He also opined Plaintiff could

perform full time work, simple, one to two step, repetitive type work with occasional

interaction with co-workers and supervisors if she is not in an active psychotic state.

(Tr. 1028-29, 1037-39).  Similarly, Dr. Williams reviewed the record and opined that

Plaintiff could maintain non-psychotic and independent functioning when sober and in

treatment, could reliably carry out simple, routine tasks and familiar detailed tasks

adequate to complete 8 hour workdays, could work with the public and co-workers in a

casual setting, and could accept non-threatening supervision.  (Tr. 360, 374).

Additionally, Dr. Williams opined Plaintiff was moderately limited in social functioning;

maintaining concentration, persistence, and pace; the ability to interact appropriately

with the general public; the ability to accept instructions and respond appropriately to

criticism from supervisors; the ability to set realistic goals or make plans independently

of others; and the ability to carry out detailed instructions.  (Tr. 358-59, 372).  Dr.

Williams further stated that Plaintiff was not significantly limited in several other areas,

including the ability to complete a normal workweek without psychologically based

interruptions.  (Tr. 358-59).

As the Commissioner correctly pointed out, Dr. Lewis' and Dr. Williams' opinions

are bolstered by a general lack of examining mental health professional findings that

Plaintiff was psychotic.  (Tr. 354-56, 940, 943, 1041).  For example, in 2003, Dr.

Sanchez stated that Plaintiff could avoid psychotic and depressive episodes with

appropriate medical treatment and that she had done quite well, despite not being

treated with an antipsychotic.  (Tr. 272-73).  He also stated that Plaintiff exhibited no

cognitive or memory defect.[12]  (Tr. 273).  The record also revealed large gaps in mental

health treatment and medication.[13]  (Tr. 1017-27).  Contrary to Plaintiff's argument that

she exhibited a clear decline over time and was unstable at the time of her

examinations with Drs. Sanchez, Maida, and Lucas, Dr. Lewis accurately stated:

> [w]hat the record does not really document is ... an ongoing
> forward psychotic process that you often seen [sic] in
> schizophrenic impairments.  What is curious here is that she
> had seen a number of practitioners, some for extended periods
> of time, who really take no note of any particular psychological
> problems ...

(Tr. 1012-18).

      Plaintiff's activities of daily living also support Dr. Lewis' and Dr. Williams'

opinions.  (Tr. 106-09, 111, 113, 1068-72).  As aforementioned, Plaintiff drives, uses

public transportation, gets along with people, is able to deal with deadlines and

---

[12]Plaintiff argues the ALJ ignored the alleged decline in Plaintiff's condition, as evidenced by the difference between Dr. Sanchez's 2003 and 2007 opinions.  (Doc. 16, p. 19).  However, Plaintiff's argument lacks merit.  Dr. Sanchez did not treat, examine, or evaluate Plaintiff between 2003 and 2007.  See (Tr. 272-73, 978-80).  In his 2007 opinion, Dr. Sanchez opined Plaintiff was markedly limited in 6 out of 20 work related mental status tasks and essentially opined she could not work.  (Tr. 976-77, 979).  However, as noted by the ALJ, Dr. Sanchez's opinion fails to address any functional limitations while Plaintiff was on medication and the fact that she worked in 2004, stopping only because of physical injury.  (Tr. 29, 978-79, 1046).  Further, the alleged decline is not supported by the evidence of record.  In his 2007 opinion, Dr. Sanchez stated that one reason he believed Plaintiff was not in remission was because she was still afraid to watch television as a result of hallucinations.  (Tr. 979).  However, he also noted Plaintiff was not experiencing hallucinations and she testified to watching television.  (Tr. 979, 1068).  Dr. Sanchez's opinions include no specific details or reference to the record evidence as to how Plaintiff's condition was worse in 2007 than in 2003.  (Tr. 272-73, 978-80).  And, because Dr. Sanchez's opinion that Plaintiff cannot work offers a legal conclusion on a matter strictly reserved to the Commissioner, it is not entitled to any deference.  20 C.F.R. §§ 404.1527(e), 416.927(e).

[13]Plaintiff received mental health treatment in 2002 and began taking Risperdal.  (Tr. 526-34).  The record does not reveal any other specialized mental health treatment, beyond single consultations, after 2002.

schedules, can follow written or spoken instructions, is able to care for herself, watches

television, cooks, shops, cleans, manages her money, reads magazines, talks on the

telephone, visits friends and family, and attends church.  (Tr. 106-09, 111, 113, 10-68-

72).  Accordingly, the Court finds Dr. Lewis' and Dr. Williams' findings are supported by

and consistent with the record as a whole; thus, the ALJ properly relied on their

opinions.

Plaintiff further argues that the ALJ erred in failing to acknowledge Dr. Maida's

April 2007 letter disputing Dr. Lewis' testimony and stating Plaintiff is not capable of

working.  (Tr. 995).  As an initial matter, there appears to be no evidence that Dr. Maida

reviewed Dr. Lewis' actually testimony or that he examined Plaintiff or the record prior to

writing his letter.  (Tr. 937-56, 995).  Additionally, Dr. Maida's opinion that Plaintiff is not

capable of working is a legal conclusion reserved to the Commissioner.   20 C.F.R. §§

404.1527(e), 416.927(e).  Further, this letter merely reiterates Dr. Maida's earlier

opinions, (Tr. 937-56, 995), and remanding to have the ALJ specifically discuss the

weight he assigned to Dr. Maida's letter would serve no practical purpose, would not

alter the ALJ's decision; therefore, would be a waste of judicial and administrative

resources.  See NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 (U.S. 1969).

**3.     Whether the ALJ properly relied on the VE's testimony that Plaintiff could perform work existing in significant numbers in the national economy.**

Finally, Plaintiff argues the ALJ erred, and violated Social Security Ruling

("SSR") 00-04p, when he relied on the VE's testimony that an individual limited to

simple, one to two step tasks could perform work as a ticketer, addresser, driver, and

preparer.  (Doc. 16, pp. 20-24).  Specifically, Plaintiff contends the VE's testimony

conflicts with the classification of these jobs as Reasoning Level 2 jobs by the U.S.

Department of Labor's Dictionary of Occupational Titles ("DOT"), and the VE

erroneously testified that his testimony was consistent with the DOT.  (Id.).  Plaintiff's

argument is not supported by controlling case law.

Prior to the promulgation of SSR 00-04p, the Eleventh Circuit considered the

issue of how to resolve a conflict between the testimony of a VE and the DOT.  In Jones

v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999), the Eleventh Circuit held that ". . .

when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT."

The Court reasoned that the VE's testimony may be followed because the DOT "is not

the sole source of admissible information concerning jobs" and that by its own wording

"the SSA itself does not consider the DOT dispositive."  Accordingly, under Jones an

ALJ may rely upon the testimony of a VE without first resolving any conflict with the

DOT.

Although SSR 00-04p was promulgated after Jones was decided, it does not

undo the rule in Jones[14] nor does SSR 00-04p expressly mandate that an ALJ has a

duty to independently investigate whether there is a conflict between the VE's testimony

and the DOT.  Rather, SSR 00-04p merely obligates the ALJ to ask the VE if there is a

---

[14]After the promulgation of SSR 00-04p, the Eleventh Circuit held in an unpublished opinion that because social security rulings do not bind the courts, even where an inconsistency exists between the testimony of a VE and the DOT, an ALJ is entitled to rely upon the testimony of the VE, without first resolving the conflict. See Miller v. Comm'r of Soc. Sec., 246 Fed. Appx. 660, 2007 WL 2461771, at *2 (11th Cir. 2007) The Court reasoned that the rule in Jones -- that the "VE's testimony trumps the DOT" -- is binding precedent in this Circuit, notwithstanding the promulgation of SSR 00-04p.

conflict and if the VE identifies a conflict the ALJ is required then -- and only then -- to

address the conflict in his decision and resolve it.  See, e.g., Martin v. Commissioner of

Social Security, 170 Fed. Appx. 369, 2006 WL 509393, at *4-5 (6th Cir. 2006)

(unpublished) (holding that "[n]othing in SSR 00-04p places an affirmative duty on the

ALJ to conduct an independent investigation into the testimony of witnesses to

determine if they are correct" and therefore "[b]ecause [the VE] did not bring the conflict

to the attention of the ALJ, the ALJ did not need to explain how the conflict was

resolved."); Haas v. Barnhart, 91 Fed. Appx. 942, 947-48 (5th Cir. 2004) (where conflict

not brought to the attention of the ALJ it was not reversible error for the ALJ to rely upon

the testimony of the VE); Gibbons v. Barnhart, 85 Fed. Appx. 88, 93 (10th Cir. 2003)(no

error under SSR 00-04p where the VE did not identify conflicts with the DOT); Brijbag v.

Astrue, 2008 U.S. Dist. LEXIS 7063, 2008 WL 276038, at *2 (M.D. Fla. Jan. 31,

2008)("the ALJ need not independently corroborate the VE's testimony and should be

able to rely on such testimony where no apparent conflict exists with the DOT"); Lembke

v. Barnhart, 2006 U.S. Dist. LEXIS 94154, 2006 WL 3834104 *15 (W.D. Wis.

2006)(reversal is not warranted where plaintiff identifies a conflict after the hearing but

during the hearing no conflict was identified so long as the ALJ complied with SSR

00-04p by asking the VE at the hearing to identify conflicts).

      Here, the ALJ specifically asked the VE if his testimony was consistent with the

DOT in terms of skill and exertion level and the VE testified it was.  (Tr. 1091).  During

the hearing, the VE did not identify any conflicts between his testimony and the DOT nor

did the Plaintiff challenge the VE's testimony.  Accordingly, because the ALJ had no

obligation to resolve a conflict that was not identified at the hearing, and that was not otherwise apparent -- and in view of the fact that the law in this Circuit provides that an ALJ may rely upon the testimony of a VE even if it is in conflict with the DOT -- the ALJ did not err by relying upon the testimony of the VE to support his determination that Plaintiff was not disabled.[15]

## IV.   CONCLUSION

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this _17th_ day of August, 2010.

---

[15]Moreover, Plaintiff's assertions regarding the inconsistency between the VE's testimony and the DOT reasoning development level of the jobs in question also lacks merit because the reasoning development level for a job is an aspect of the GED scale used in the DOT. The DOT specifically states that the GED:

> embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self study.

DOT, App. C, § III. Reasoning development level pertains to an aspect of the education level needed to perform a job, not the work requirements of the job. Therefore, an individual's functional limitations cannot be compared to a GED level because the two are not related.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record